UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of<br><br>**AMTRUST NORTH AMERICA, INC. and TECHNOLOGY INSURANCE COMPANY, INC.,**<br><br>                                        Petitioners,<br><br>v.<br><br>**PACIFIC RE, INC., and PAC RE 5-AT,**<br><br>                                        Respondents. | Civil Action No. 15-cv-7505<br><br>**RESPONDENTS' OPPOSITION TO PETITION TO CONFIRM AN ARBITRATION AWARD** |

Defendants Pacific Re, Inc. ("Pac Re") and Pac Re 5-AT ("Cell 5", and together with Pac Re, "Respondents") respectfully submit this memorandum of law in opposition to Plaintiffs AmTrust North America, Inc. and Technology Insurance Company, Inc.'s (collectively, "Petitioners") Petition to Confirm an Arbitration Award (the "Petition"). Petitioners' request to confirm the award overreaches as it relates to Pac Re. The issue of Pac Re's role in the underlying arbitration was defined by the United States District Court for the District of Montana, which held that Pac Re's involvement derives only from Cell 5's existence within it. The Petition also seeks to confirm an award that is, in part, not final.

## FACTS

**I.      The Factual Allegations of the Petition**

*For the purpose of this submission only*, Respondents do not meaningfully dispute the facts of the Petition, except as to the following:

- Paragraph 5 of the Petition alleges that Pac Re 5-AT is a "segregated cell of Pac Re." In fact, Pac Re 5-AT is a protected captive cell, created under Montana's statutory structure for protected cell captive insurance companies. *See, e.g.*, Montana Code Annotated § 33-28-301, *et. seq*.

- Paragraphs 9-12 refer to but do not correctly paraphrase contractual documents, which are annexed to the Petition and are incorporated by reference herein.

- Paragraph 19 refers to "Respondents [sic] fully briefed opposition," but in fact Respondents only briefed a limited argument, not the amount of or propriety of the amount demanded in the arbitration (i.e. the "calculation-based objections" referred to by Petitioner were never briefed by order of the Panel).

- Paragraph 22 refers to Respondents' "declin[ation] to post collateral," when in fact Respondents attempted but were **unable** to do so. See Declaration of Brian A. Bender ("Bender Decl."), Ex. A.

- Paragraph 27, 29, and 30 refer to the award as a "final award" without acknowledging that there are elements of the award that are interim in nature, as evidenced by the name of the award itself ("Interim Final Award"), and without acknowledging that the award is largely for **collateral**, not damages, and therefore might be returned to Respondents.

II. **The Montana Court**

The Petition also fails to include a key document, interpretation of which controls this proceeding vis-à-vis Pac Re. Specifically, it fails to refer to the May 13, 2015 Order on Cross Motions for Summary Judgment issued by of the Hon. Carolyn S. Ostby, U.S.M.J. of the United States District Court for the District of Montana. See Bender Decl., Ex. B ("Montana Order"). The Montana Order directly addressed the question of whether Pac Re could be forced to participate in the underlying arbitration, since its protected cell, Cell 5, is the entity that was established specifically for the insurance program at issue.

Cell 5 is in effect the name assigned to two bank accounts, Wells Fargo accounts ending in 0000 and 0900. See, e.g., Bender Decl., Ex. C ("SIS Interrogatories"); id., Ex. D ("Wells Fargo Statements"). These accounts were dedicated to the program in dispute in the arbitration, in *AmTrust North America, Inc., et al v. Safebuilt Insurance Services, Inc., et al.*, No. 14-cv-9494 (SDNY) (the "Southern District Action"), and of course here. Those accounts never contained funds from any other program, nor did they contain assets from other cells within Pac Re, nor did

they contain funds from Pac Re.  Conversely, no money from the insurance program in dispute was ever in the bank accounts of any other cell, nor in the bank accounts of Pac Re.

The Montana District Court determined that "a protected cell does not have a separate legal identity," which is why Pac Re entered into the agreement containing the arbitration clause on behalf of Cell 5, and why Cell 5 cannot sue or be sued.  The Montana Court concluded that Pac Re was therefore a proper party to the arbitration, though "[i]t is clear that the liabilities and assets of a protected cell are segregated from the other cells and from the P[rotected] C[ell] C[aptive] . . . ."  Montana Order at 10.  In other words, Cell 5 has to act through Pac Re, but this does not mean that judgments and awards rendered against Cell 5 can be enforced against Pac Re's "core" or Pac Re's other protected cells.  Petitioners, through their counsel, are improperly attempting to collect the award from Pac Re, not Cell 5.  *See* Bender Decl., Ex. F ("Invoice").

## LEGAL ARGUMENT

### I.  PAC RE IS GOVERNED BY MONTANA LAW

Under New York law, questions of internal affairs of a corporation and the corporate form are governed by the law of the state of incorporation.  *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands."); *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) ("Under New York law, issues relating to the internal affairs of a corporation are decided in accordance with the law of the state of incorporation.") (citing *Hart v. General Motors Corp.*, 129 A.D.2d 179 (1st Dep't 1987)); *Sonnenblick-Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 88 (S.D.N.Y. 1996) (applying law of state of incorporation in veil-piercing dispute).  Given that Pac Re is a Montana corporation, *see*

Petition, ¶ 4, there can be no reasonable dispute that the law of Montana applies to Pac Re's internal affairs.

## II. CELL 5 WAS CREATED UNDER AND IN ACCORDANCE WITH MONTANA'S PROTECTED CELL CAPTIVE STATUTE

Under Montana law, an insurance company may organize as a protected cell captive. *See* Montana Code Annotated § 33-28-301. There does not appear to be any argument between the parties that Cell 5 was created under this provision of the Montana code, nor that it was created with the input and approval of Montana's Office of the Commissioner of Securities and Insurance.

The Defendants in the Southern District Action, in response to discovery served there, have produced documents and discovery responses that confirm that Cell 5 kept protected cell assets and liabilities:

> (A)   separate and separately identifiable from the assets and liabilities of the protected cell captive insurance company's general account; and
>
> (B)   attributable to one protected cell separate and separately identifiable from protected cell assets and protected cell liabilities attributable to other protected cells.

Mont. Code Ann. § 33-28-301(2)(e)(i). Although extensive discovery has taken place in the Southern District Action, none of it can or does suggest that Cell 5 was improperly created, nor that Cell 5's assets were improperly differentiated from those belonging to Pac Re's general account (its "core") and Pac Re's other protected cells.[1] The bank accounts for Cell 5 are clearly demarcated as such. *See, e.g.*, Bender Decl., Ex. D, Wells Fargo Statements.

---

[1] Notably, the only other place for discovery about Pac Re and/or Cell 5 is the arbitration, where no discovery has occurred.

### III.     PAC RE'S LIABILITY IS DERIVATIVE OF AND LIMITED TO CELL 5

The Montana Court, facing an issue of first impression[2], *see* Montana Order at 10, determined that Pac Re was a proper party to the arbitration.  The Montana Court based this decision primarily on two factors:  (1) a protected cell like Cell 5 is not (unless incorporated) "a separate de jure legal entity," Montana Order at 10, and therefore cannot sue or (more important for the purposes of this action) be sued; and (2) an unincorporated protected cell can only act through the protected cell captive insurance company, *see* Montana Order at 11 ("Although a protected cell has many attributes of independence . . . it remains a part of the PCC, which has the capacity to act on behalf of the protected cell, as in this instance Pacific Re acted on behalf of Cell 5 in agreements at issue.").

The Montana Court did *not* find that the assets of Pac Re or those of any cell other than Cell 5 were properly at issue in the arbitration; to the contrary, the Montana protected cell captive statute and the Montana Order both make quite clear that the only assets that are at issue are the assets specifically designated to Cell 5.  This is clear not only from relevant Montana law, but also from analogous legal entities, such as unincorporated business associations.

The Montana statutory construction that created Cell 5 discusses the limited interplay of the liability of unincorporated cells and protected call captive companies.  In essence, the Montana statute spells out that the assets of the cell (here, Cell 5) are distinct from the assets of the protected captive cell company (here, Pac Re), as well as the other cells of the protected captive cell company.  *See, e.g.*, Mont. Code. Ann. § 33-28-301(c) ("Amounts attributed to a protected cell under this chapter, including assets transferred to a protected cell account, are owned by the protected cell . . . .").

---

[2] It does not appear that any other cases have been decided on this issue, leaving the Montana Order as the only known decision on point.

Towards that end, the Montana Court noted that "the statute does not contemplate that the assets of a protected cell will be used to satisfy the liabilities of any other cell." Montana Order at 11 (citing Mont. Code Ann. § 33-28-301). This was further confirmed by the Montana Court, which stated unequivocally that "**[i]t is clear that the liabilities and assets of a protected cell are segregated from the other cells and from the [Protected Cell Company]** . . . ." *See* Montana Order at 10 (emphasis added). Petitioners choose to ignore this aspect of the Montana Order, and are instead attempting to collect on the award from Pac Re, not Cell 5. *See* Bender Decl., Ex. F, Invoice. This is wholly improper, and in contradiction with the Montana statutes cited above, not to mention the Montana Order. There can be no doubt that Pac Re's inclusion in the arbitration, and Petitioner's ability to satisfy any judgment arising from this confirmation, is limited exclusively to the Cell 5 bank accounts, Wells Fargo accounts ending in 0000 and 0900.

### IV.   THE INTERIM FINAL AWARD IS NOT IN FACT FINAL

The September 9, 2015 Interim Final Award (as clarified by the September 14, 2015 Memorandum of Grounds) should be vacated pursuant to 9 U.S.C. §10(a)(4) because a definite award upon the subject matter submitted has not yet been made with respect to all of the collateral and fees sought by Petitioners. The award, as clarified, permits Respondents to present defenses to (a) any additional collateral sought by Claimants, (b) any additional third-party administrator fees sought by Claimants, and (c) the propriety of any payments made by Claimants out of the collateral. *See* Bender Decl., Ex. E ("Memo of Grounds") at ¶ 2(f). Thus, while the award states that it is "final," it is not actually final with respect to anything other than the already-awarded third-party administrator fees.

**CONCLUSION**

For the foregoing reasons, Respondents respectfully request the arbitral Interim Final Award not be confirmed, or only be confirmed as to the already-awarded third-party administrator fees and as to the assets of Pac Re 5-AT.

Dated: October 16, 2015

/s/ Brian Bender
Abbie Eliasberg Fuchs
Brian A. Bender
Peri A. Berger
**HARRIS BEACH PLLC**
100 Wall Street
New York, New York  10005
Phone:      (212) 687-0100
Facsimile:   (212) 687-0659
afuchs@harrisbeach.com
bbender@harrisbeach.com
pberger@harrisbeach.com
*Attorneys for Respondents Pacific Re, Inc. and Pac Re 5-AT*